**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| STEPHANIE KEITHAN, | ) |
| | ) |
| *Plaintiff*, | )    CASE NO. 23-cv-782 (OAW) |
| | ) |
| v. | ) |
| | ) |
| LAKESIDE ENVIRONMENTAL | ) |
| CONSULTANTS, LLC, | ) |
| | ) |
| *Defendant*. | |

**ORDER DISPOSING OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Stephanie Keithan ("Keithan" or "Plaintiff") alleges that Lakeside Environmental Consultants, LLC ("ECI" or "Defendant") discriminated against her on the basis of her disability in violation of federal and state law.  She also alleges Defendant failed to accommodate her reasonable request for accommodation and retaliated against her after she disclosed her disability and requested time off from work.  Defendant moves this court to enter summary judgment against Plaintiff and to dismiss this case.  For the foregoing reasons, Defendant's motion is **GRANTED IN PART** and is **DENIED IN PART**.

I.  **FACTS**

ECI operates as a type of staffing company for Eversource, a large energy provider. ECI hired its employees for the specific purpose of providing services to Eversource and only to Eversource.  ECF No. 43-2, *Plaintiff's Counterstatement to Defendant's Statements of Fact*, ¶ 1.[1]

---

[1] The court will refer to Plaintiff's counterstatement of material facts simply as "SOF."

ECI hired Plaintiff on approximately December 4, 2020 as an "Analyst." SOF ¶ 8. In her role as an Analyst, Plaintiff was primarily responsible for organizing and analyzing invoices from Eversource's vegetation management vendors. *Id.* ¶ 9. Keithan reported to her manager, Paul Karpel. *Id.* ¶ 13.

Almost immediately after Plaintiff started working at ECI/Eversource, Karpel began receiving negative feedback about Keithan's job performance. *Id.* ¶ 18. The Director of Eversource's Vegetation Management Division, Alan Carey, expressed concerns about Plaintiff's performance. *Id.* ¶ 20. More specifically, "Eversource reported to [] Karpel that Plaintiff was tardy more often than acceptable, and that she was either unable or unwilling to follow directions and correctly perform basic tasks, including alphabetization of invoices." *Id.* ¶ 21. These concerns were raised prior to any mention of Plaintiff's disability. *Id.* ¶¶ 23-25.

On or about January 7, 2024, Karpel met with Plaintiff to issue her a verbal warning regarding her performance as communicated to him by Eversource. *Id.* ¶ 26.[2] The next day, Karpel sent an email indicating that he had been asked to find a replacement for the plaintiff—again, before Defendant was aware of Plaintiff's disability. *Id.* ¶¶ 39-40.[3]

Sometime in late January 2021, Karpel prepared a written warning that he planned to deliver to Plaintiff in response to additional complaints from Eversource. *Id.* ¶ 31. That written warning explained that Keithan needed to be punctual, meet client expectations, and properly organize documents. *Id.* ¶ 32. Plaintiff called out of work on the day Karpel intended to deliver the written warning, and thus it never was delivered. *Id.* ¶ 33.

---

[2] The parties appear to agree that Karpel intended to deliver a verbal warning (and even documented it), but they contest whether it was actually delivered. *Compare* SOF ¶¶ 24-27 with SOF ¶ 28.
[3] Plaintiff's SOF states, "[a]dmitted that on January 8, 2021, Karpel sent an email stating that he had been asked to replace the plaintiff." SOF ¶ 40.

On February 5, 2021, Keithan presented at an emergency room with sudden nausea and pain.  At the hospital, she was diagnosed with an ovarian cyst and urinary tract infection.  *Id.* ¶ 49.[4]  There, doctors cleared Plaintiff to return to work on February 8, 2021.  *Id.* ¶ 51.  However, on February 8, 2021, Plaintiff called out of work.  *Id.* ¶ 71.  Four days later, on February 12, 2021, Plaintiff underwent outpatient surgery to remove the cyst.  *Id.* ¶ 52.  The surgery successfully removed the benign cyst.  *Id.* ¶ 56.  Doctors discharged Plaintiff that same day and cleared her to return to work on February 22, 2021.  *Id.* ¶ 57.  Until Plaintiff decided to go to the emergency room, nobody at ECI or Eversource knew anything about her condition.  *Id.* ¶ 72.  In fact, these events took place "*well after*" the decision had been made to terminate her.  *Id.* ¶ 46.

On February 18, 2021, six days after her procedure, Plaintiff was briefly readmitted to Manchester Memorial Hospital due to complications which resolved within ten days.  *Id.* ¶ 59.  Plaintiff was fully cleared to resume all her normal activities, without any restrictions, by March 11, 2021, though she was able to work as early as February 26, 2021.  *Id.* ¶ 61.

On February 19, 2021, two days after Karpel extended an offer to Plaintiff's replacement, he called Plaintiff to inform her that she was being taken off the contract with Eversource, and that her employment with ECI was being terminated.  *Id.* ¶ 87.  Plaintiff alleges Karpel told her that she was "not a good fit" since she needed an "extended leave of absence."  *Id.* ¶ 90.

Plaintiff is not aware of any disabled ECI employee who was ever subjected to ridicule or negative comments on the basis of disability.  *Id.* ¶ 103.  Further, she did not experience a culture averse to people with disabilities while she was at ECI.  *Id.* ¶ 104.

---

[4] Plaintiff's medical records do not contain any mention of cancer.  SOF ¶ 48.

## II.   __LEGAL STANDARD__

For the movant to prevail with its motion for summary judgment, it must "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the court must view all facts in the light most favorable to the non-moving party.  *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  Rather, for a party's claim or defense to survive, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

The United States Court of Appeals for the Second Circuit instructs district courts to be cautious of granting summary judgment in employment discrimination cases "where the employer's intent, motivation, or state of mind is [the material fact] at issue."  *Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 709 (S.D.N.Y. 2013).  But at the same time "[t]he court's role is to prevent unlawful [employment] practices, not to act as a superpersonnel department that second guesses employer's business judgments."

*Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) (cleaned up; internal quotation marks and citation omitted).

## III.   **DISCUSSION**

### A.  **Discrimination Claims**

#### 1.  *ADAAA*

To establish a *prima facie* case discrimination under the ADAAA, the plaintiff must show that (1) ECI is a covered employer under the Act; (2) she was disabled within the meaning of the Act; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered adverse employment action *because of* her disability.   *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019).   The court does not find that the plaintiff is disabled within the meaning of the Act but foregoes discussion of that point (for now) and proceeds to evaluate whether Ms. Keithan can establish that she suffered adverse employment action "because of" her alleged disability.

Before the ADA amendments, the Supreme Court of the United States reviewed the causation standard under the Age Discrimination in Employment Act (ADEA).   *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009).   In *Gross*, the Supreme Court held Title VII's motivating factor test did not apply in ADEA cases because "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."   *Gross*, 557 U.S. at 174; *see also University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013) (applying but-for causation test to Title VII retaliation claims).

The text of the ADAAA does not provide that a plaintiff may prevail on her discrimination claim by showing that disability was simply a motivating factor. *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019). Therefore, despite the plaintiff's arguments that the court should employ the "motivating factor" test in evaluating her ADAAA discrimination claim, it is established that courts in the Second Circuit apply but-for causation. *Natofsky*, 921 F.3d at 349-50.

The court is compelled to grant summary judgment in favor of the defendant on Plaintiff's ADAAA discrimination claim. Plaintiff admits that the defendant became aware of her disability "well after" the decision had been made to terminate her. SOF ¶ 46 (admitting the statement "Plaintiff testified that she first became aware that she had a medical condition on or about Friday, February 5, 2021, which was well after the decision had been made to terminate her, and after recruitment for her replacement had begun.").[5] But-for causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020). That means ECI's knowledge of Keithan's disability at the time it decided to terminate her is required to establish the fourth element of a *prima facie* discrimination case because the disability must be the but-for cause of the plaintiff's adverse employment action. *Jones v. New York City Transit Auth.*, 838 Fed. Appx. 642, 644 (2d Cir. 2021) (summary order); *Soares v. Univ. of New Haven*, 154 F. Supp. 2d 365, 373 (D. Conn. 2001) (granting summary judgment because plaintiff failed to demonstrate

---

[5] While Plaintiff could have denied or objected to that statement, she did not. Further, Defendant's citation to the record does *not* support the contention, though it is supported by other record evidence reviewed by the court. *See, e.g.,* Karpel Dep. Tr. 36:16-22 (for the proposition the defendant interviewed candidates); 37:15-21 (explaining Plaintiff had been "written off" before she discovered her disability); ECF No. 39, Ex. 9 (email string dated Jan. 8, 2021); ECF No. 43-5, Carey Dep. Tr. 41:5-11, 42:25-43:14. Again, Plaintiff could have objected to this statement arguing it was not supported by the evidence, but she did not.

Defendant's knowledge before decision to terminate); *Vargas v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 16-cv-5733 (JPO), 2020 U.S. Dist. LEXIS 96098, *17-19 (S.D.N.Y. Jun. 1, 2020) (collecting cases); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 n.7 (2003) ("if [an employer] were truly unaware that . . . a disability existed, it would be impossible for [an adverse employment action] to have been based, even in part, on respondent's disability").  Plainly stated, based on the plaintiff's admission, it is clear that the defendant ultimately would terminate Keithan absent her alleged disability and that she cannot establish causation.

2. *CFEPA*

The parties disagree whether the plaintiff is a member of a relevant protected class under the CFEPA.  Under the CFEPA, "physically disabled" refers to any individual who has "any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or being hard of hearing or reliance on a wheelchair or other remedial appliance or device." Conn. Gen. Stat. § 46a-51.  The CFEPA lacks the restrictive requirement that a disability "substantially limit a major life activity," and consequently, courts interpret the CFEPA to be "broader" than the ADAAA.  *See Beason v. United Techs. Corp.*, 337 F.3d 271, 278 (2d Cir. 2003).

The word "chronic" is undefined in the statute and plainly modifies "physical handicap, infirmity, or impairment."[6]  *Porto Rico R., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920); *Jackson v. Water Pollution Control Authority*, 278 Conn. 692, 703, 900 A.2d 498

---

[6] In *Caruso v. Siemens*, 392 F.3d 66 (2d Cir. 2004), three questions were certified to the Supreme Court of Connecticut by the United States Court of Appeals for the Second Circuit, including "What is the correct interpretation of "chronic" disabilities under CFEPA?" The underlying case settled before a decision was issued by the Supreme Court of Connecticut.

(2006). "[T]he Superior Court has relied on the dictionary definition of chronic in analyzing a physical disability claim under CFEPA." *Phadnis v. Great Expressions Dental Ctrs. of Conn.*, No. HHD-CV-136042588, 2015 Conn. Super. LEXIS 168, *5 n.1 (Conn. Super. Ct. Jan. 26, 2015) (*Hon. Nina F. Elgo, J.*) (collecting cases), *aff'd. Phadnis v. Great Expression Dental Centers of Connecticut, P.C.*, 170 Conn. App. 79, 153 A.3d 687 (2017). "Chronic is defined as, '[w]ith reference to diseases, of long duration, or characterized by slowly progressive symptoms; deepseated and obstinate, or threatening a long continuance;—distinguished from acute.'"[7] *Setkoski v. Univ. of Connecticut Health Ctr.*, No. HHD-cv-106012794, 2012 Conn. Super. LEXIS 1264, 2012 WL 2044802, at *2 (Conn. Super. Ct. May 10, 2012) (*Hon. Edward S. Domnarski, J.*) (internal citations and quotations omitted)). Thus, the length of the disease and whether it requires "constant medication and treatment" are critically important. *Arizmendi v. Rich Prods. Corp.*, No. 21-cv-371 (JCH), 2022 WL 4119127, 2022 U.S. Dist. LEXIS 164087, *15-16 (D. Conn. Aug. 10, 2022) (quoting *Peck v. City of Waterbury Bd. of Educ.*, No. UWY-cv-196044774-S, 2020 Conn. Super. LEXIS 619, 2020 WL 3485716, at *2 (Conn. Super. Ct. June 3, 2020) (*Hon. Matthew Dallas Gordon, J.*)).

Plaintiff argues that her surgically removed and benign ovarian cyst constitutes a disability under the CFEPA. The parties do not dispute that a doctor diagnosed the plaintiff with a benign ovarian cyst. *See* SOF ¶ 49. Instead, Defendant argues that her condition does not constitute a disability under the CFEPA while Plaintiff contends her

---

[7] Medical dictionaries support this interpretation. One such dictionary defines "chronic" as a "health-related state, lasting a long time." CHRONIC, Stedmans Medical Dictionary 175190 (2014).

condition was chronic and that the court must assess her condition in its untreated state without considering the effect of surgery.

Defendant's authority on this issue is unpersuasive. In its reply, ECI cites *Boutillier*, *Setkoski*, and *Seely* for the proposition that "Connecticut courts routinely find that acute conditions that are fully resolved through surgical procedures are not considered chronic and therefore do not constitute disabilities under the CFEPA." But the law is not so clear.

> There is a split of authority on whether the plaintiff's condition must be unresponsive to medical treatment and ameliorative measures for the condition to be "chronic." On the one hand, courts acknowledge that the condition must substantially limit a major life activity to be a disability under the [ADAAA], and some courts require the condition to be unresponsive to medical treatment and ameliorative measures to be "chronic" under the Connecticut Fair Employment Practices Act.

> On the other hand, some courts recognize that "disability" is defined more broadly under the Connecticut Fair Employment Practices Act than the [ADAAA], and one court rejects the requirement that the condition must be unresponsive to medical treatment and ameliorative measures to be "chronic" under the Connecticut Fair Employment Practices Act.

*Tryon v. EBM-Papst, Inc.*, No. HHB-cv-17-6037028-S, 2017 Conn. Super. LEXIS 4857, 2017 WL 6273698, at *5-6 (Conn. Super. Ct. Nov. 9, 2017) (*Hon. Lisa K. Morgan, J.*); *see also Phillips v. Transom Symphony Opco, LLC*, No. 3:22-CV-890 (VAB), 2024 U.S. Dist. LEXIS 40856, 2024 WL 1012945, at *6 (D. Conn. Mar. 8, 2024); *Berube v. Great Atl. & Pac. Tea Co.*, No. 3:06-cv-00197 (VLB), 2010 U.S. Dist. LEXIS 76746, 2010 WL 3021522, at *11 (D. Conn. July 29, 2010) ("the Court is not persuaded by [Defendant's] argument that [Plaintiff] did not suffer from a chronic impairment because his conditions were controlled through treatment during his employment.").

The plaintiff's case suffers from a lack of proof. Accepting the plaintiff's argument that the court should assess her condition without considering ameliorative measures, like her surgery, the court cannot conclude her condition was "chronic." Even if the court

were to ignore any ameliorative measures while construing evidence in favor of the non-moving party, the undisputed material facts establish Plaintiff's condition was not chronic.

Plaintiff did not submit any medical documentation or opinions of an expert witness permitting even a reasonable inference that her condition was chronic. Perhaps tellingly, Plaintiff's additional statements of material fact do not cite to record evidence to support the statement that "Plaintiff's ovarian cysts were a chronic impairment only alleviated by surgical intervention." ECF No. 43-2, *Plaintiff's Statements of Additional Fact*, ¶ 8; *see also* Local R. 56(a) (requiring statements of fact to be supported by evidence).[8] Without supporting evidence, the plaintiff asks the court to evaluate the severity and duration of her condition absent surgery, though judges often rely on the parties to offer evidence provided by those with proper qualifications and experience to substantiate their views such as whether a particular medical condition is chronic or temporary. Without such evidence, the court cannot conclude ovarian cysts constitute a chronic condition, and absent a statutory definition to the contrary, the court finds this conclusion consistent with usage of the term "chronic condition" in casual conversation, dictionaries, Internet searches, and medical resources, especially when public sources suggest ovarian cysts may resolve themselves on their own.[9]

Without the benefit of medical records or the opinion of a medical expert, the court is left to rely on Plaintiff's lay (and contradictory) opinions of her medical condition. Plaintiff conceded her condition was "temporary" and not chronic. ECF No. 43-4 Keithan

---

[8] Another statement is unsupported (ECF No. 48 ¶ 13) and Plaintiff's responses to Defendant's SOF are often repetitive and conclusory. *See* SOF ¶¶ 63, 67-68 (for example, the quote "[b]ut for surgical intervention, the ovarian cysts would have continued to prevent plaintiff from working").

[9] Mayo Clinic, "Ovarian Cysts" (July 28, 2023), available at: https://www.mayoclinic.org/diseases-conditions/ovarian-cysts/symptoms-causes/syc-20353405 (last visited Jul. 21, 2025).

Dep. Tr. 60:2-8.  To be sure, the plaintiff offered facts indicating she "couldn't walk well. . .lift. . .[or] focus, concentrate, [or] memorize" because of the pain.  ECF No. 48; *see* also ECF No. 43-4 Keithan Dep. Tr. 59:7-15.  But she also testified that those symptoms were alleviated by the surgery and there is nothing in the record that would permit the court to conclude that those symptoms would have persisted.

Simply stated, "[w]hile it is true that a court is required to resolve all ambiguities and draw all factual inferences in favor of the nonmovant, a plaintiff may not survive summary judgment merely by conjuring a hypothetical issue of material fact.  [The] court is obliged to ignore statements submitted without supporting evidence." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015).  Accordingly, the defendant's motion for summary judgment is granted as to Plaintiff's CFEPA disability discrimination claim.

## B. <u>Reasonable Accommodation Claims</u>

### 1. *ADAAA*

An employer also may violate the ADAAA by failing to provide a reasonable accommodation.  "A plaintiff states a prima facie failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an  employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125-126 (2d Cir. 2013).

The ADAAA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such

an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Connecticut courts have construed CFEPA more broadly than the federal ADAAA statute. *See Beason v. United Technologies*, 337 F.3d 271, 277-278 (2d Cir. 2003)

The requirement that a major life activity be substantially limited requires the court to consider the actual or expected duration of any alleged impairment when determining whether a major life activity is substantially limited. *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005). As a general matter, short term, temporary restrictions are not "substantially limiting" and do not render a person "disabled" under the ADAAA. *LaRose v. Am. Med. Response of Connecticut, Inc.*, 718 F. Supp. 3d 145, 151 (D. Conn. 2024), *aff'd*, No. 24-962, 2025 WL 1524053 (2d Cir. May 29, 2025); *see De La Rosa v. Potter,* 427 F. App'x 28, 29 (2d Cir. 2011) (temporary back injury not substantially limiting); *Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316–17 (2d Cir. 1999) (temporary neck, back, and knee injury lasting three and one-half months is not a disability within the meaning of the ADA); *Kruger v. Hamilton Manor Nursing Home*, 10 F. Supp. 3d 385 (W.D. N.Y. 2014) (generally short-term temporary restrictions are not substantially limiting and do not fall under ADA); *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 211 (D. Conn. 2012) ("temporary, non-chronic impairments of short-duration, with little or no long term or permanent impact, are usually not disabilities").

Still, the duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity and the United States Court of Appeals for the Second Circuit has cautioned district courts against assigning too much weight to summary orders, like *De La Rosa*, and that "a plaintiff's actual

disability claim under the [ADAAA] does not fail solely because [s]he failed to state that [her disability] will be permanent or chronic . . . [or] indicate the duration or long-term impact of [her] impairment such that the Court may infer that his injury was not temporary." *Hamilton v. Westchester Cty.*, 3 F.4th 86, 93-94 (2d Cir. 2021).

Here, the plaintiff's condition lasted for five weeks. There is no record evidence suggesting her condition would continue beyond early March 2021 by which point her side effects therefrom had subsided. Indeed, she conceded her condition was "temporary" and not chronic. ECF No. 43-4 Keithan Dep. Tr. 60:2-8. The record simply is devoid of any additional evidence from which the court could conclude the plaintiff was disabled within the meaning of the ADAAA. She does not detail the frequency of her pain, and there appears to be agreement that Plaintiff *could* walk and lift, just not "well." ECF No. 48, Plaintiff's Additional Statements of Fact ¶ 9. Weighing the severity of the injury with its duration, the court cannot conclude Plaintiff established a genuine dispute of material fact as to her disability.

Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's ADAAA reasonable accommodation claim.

### 2. *CFEPA*

"In order to survive a motion for summary judgment on a reasonable accommodation claim, the plaintiff must produce enough evidence for a reasonable jury to find that (1) [s]he is disabled within the meaning of the [statute], (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) the defendant, despite knowing of the plaintiff's disability, did not reasonably accommodate it." *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 415 (2008). The court

13

has found that Plaintiff was not disabled within the meaning of the statute. Therefore, Defendant's motion for summary judgment on Plaintiff's CFEPA reasonable accommodation is granted.

### C. Retaliation

#### 1. *ADAAA*

The elements of a prima facie case of retaliation under both statutes are: (1) a plaintiff was engaged in protected activity; (2) the alleged retaliator knew that plaintiff was involved in protected activity; (3) an adverse decision or course of action was taken against plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023). The "but for" causation standard applies and Plaintiff must show the adverse action would not have been taken absent her protected activity. *Natofsky*, 921 F.3d at 347. Proof of causation can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Here, Plaintiff conceded that the defendant decided to terminate her before Defendant knew about her disability. SOF ¶ 46. That means, absent her disability, she would have been terminated. Therefore, Defendant's motion for summary judgment must be granted.

#### 2. *CFEPA*

To defeat a motion for summary judgment on a claim of retaliation under the CFEPA, a plaintiff must demonstrate: (1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a casual

connection between the protected activity and the employment action." *Phadnis*, 170 Conn. App. 79, 94-95.  As a preliminary matter, the court concludes the plaintiff had a good-faith belief that she was disabled and requested a reasonable accommodation. *Ibela v. Allied Universal*, No. 21-cv-995, 2022 WL 1418886, 2022 U.S. App. LEXIS 12155, *5 (2d Cir. May 5, 2022) (summary order) (citing *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000)); *see Jackson v. Water Pollution Control Auth.*, 278 Conn. 692, 705 n.4 (2006) (noting that Connecticut courts look to federal law to interpret state employment laws); *Agosto v. Premier Maint., Inc.*, 185 Conn. App. 559, 587, 197 A.3d 938 (2018).

Plaintiff's request for a leave of absence is the protected activity in this case. Defendant's argument that there is a split on this issue is unavailing.  *See, e.g., Labrecque v. Michell Bradley*, LLC, 2025 Conn. Super. LEXIS 917, *15 (*Hon. Victoria Woodin Chavey, J.*) (citing *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002)); *Armstrong v. Aura Healthcare, LLC*, No. 24-cv-723 (VAB), 2025 WL 357839, 2025 U.S. Dist. LEXIS 17543, *20-21 (D. Conn. Jan. 31, 2025); *Dwyer v. Waterfront Enters., Inc.*, No. 12-cv-6032894-S, 2013 Conn. Super. LEXIS 1174, 2013 WL 2947907, at *11 (Conn. Super. Ct. May 24, 2013) (*Hon. Brian T. Fischer, J.*).  Further, Defendant certainly was aware of Plaintiff's protected activity and termination is an adverse employment action; therefore, all that remains is for the plaintiff to establish a causal connection between her protected activity and the employment action.

Although CFEPA and Title VII generally are interpreted and applied jointly, Connecticut trial courts frequently have declined to apply the "but for" causation standard to CFEPA retaliation claims.  *Dawson v. SEC Servs. of Conn. Inc.*, 20-cv-1310 (SVN),

2022 WL 17477601, 2022 U.S. Dist. LEXIS 219326, *26 n.6 (D. Conn. Dec. 6, 2022) ("it remains unclear whether retaliation claims under CFEPA are subject to a but for or motivating factor standard of causation"); *Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 332 n.5 (D. Conn. 2014) (noting the "uncertainty whether a retaliation claim under the ADA or parallel provision of CFEPA should be governed by a 'motivating factor' standard rather than a 'but-for' causation standard," and declining to decide the issue); *Jones v. Natchaug Hosp., Inc.*, 17-cv-1099 (JBA), 2019 WL 4723066, 2019 U.S. Dist. LEXIS 164716, *23 n.2 (D. Conn. Sept. 25, 2019) (noting discrepancy between courts considering whether to apply 'but-for' or 'motivating factor' causation to CFEPA retaliation claims. The parties' briefs do not grapple with this dispositive question.

The court finds the Supreme Court of Connecticut likely would apply the "motivating factor standard." *See Wallace v. Caring Sols., LLC*, 213 Conn. App. 605, 623-626 (2022) (applying the motivating factor standard to discrimination claims); *Desmond v. Yale-New Haven Hosp., Inc.*, 212 Conn. App. 274, 288 (2022) (holding that a retaliatory motive need only "play[] a part" in the adverse employment action) (citing *Callender v. Reflexite Corp.*, 143 Conn. App. 351, 364, 70 A.3d 1084, *cert. denied*, 310 Conn. 905, 75 A.3d 32 (2013)). Indeed, "[m]erely because [Supreme Court of Connecticut] had once looked to federal precedent to interpret a state statute does not necessitate that the court must thereafter adopt subsequent federal reinterpretation of federal law in lockstep fashion." *Gonska v. Highland View Manor, Inc.*, Docket No. CV-12-6030032-S, 2014 WL 3893100, 2014 Conn. Super. LEXIS 1602, *23 (Conn. Super. Ct. June 26, 2014) (*Hon. A. Susan Peck, J.*).

The import of finding that the motivating factor standard applies is that Plaintiff need only show that her protected activity was one factor in ECI's decision to terminate her. Provided that relaxed standard, the court finds Plaintiff has raised a genuine issue as to whether Defendant retaliated against her, at least in part because of her protected activity.

While the plaintiff concedes that ECI decided to terminate her before ever learning of her disability, the decision to terminate was not frozen in time. Here, the plaintiff testified that Karpel told her she would not be a good fit if she needed an extend leave of absence on account of her disability. *See* ECF Nos. 43-4, Keithan Dep. Tr. 33:15-20 (Plaintiff testifying that Karpel told her that she was "not a good fit" since she needed an "extended leave of absence"); 43-11 ("Thank you for taking the time to reach out regarding your upcoming medical leave. Based on the severity of the procedure, scheduled for Friday, it is likely you could need more recovery time than a weekend resulting in an extended leave of absence."). Further, the decision to extend an offer to a replacement was made in close temporal proximity to Defendant becoming aware that Plaintiff was disabled and may need a reasonable accommodation. SOF ¶ 87.

To be sure, Defendant cites reasons to doubt what was said in the conversation between Karpel and Plaintiff. *See* ECF No. 49, pgs. 12-14. But it is not the role of a court at summary judgment to weigh credibility; instead, the court need only consider what a reasonable juror could conclude.[10] Here, a reasonable juror could conclude that Karpel

---

[10] The court rejects Defendant's invitation to discard Plaintiff's testimony and find "self-serving" testimony insufficient to establish a dispute of material fact. The very label "self-serving" implies a credibility determination the court is forbidden from making. The underlying suggestion is that the plaintiff tailored her account for the benefit of her case and to get to trial. However, the Federal Rules of Evidence do not prohibit self-interested testimony and it would be peculiar that an *identical* statement otherwise would be admissible at trial but incapable as a matter of law from being considered at summary judgment. The court is not comforted by the assertion that the testimony must be "self-serving" *and* "uncorroborated," either. Indeed, the consequences of that proposition would be profound in discrimination cases where a Plaintiff's account of a whispered slur or careful bigot may never reach a jury. Therefore, it comes of little surprise

made the statement and thus could determine that the protected activity impermissibly factored into ECI's decision to terminate the plaintiff when it did so.

The relevant timing is critically important in this case. Embedded within every termination decision are a host of additional questions an employer must address—who will terminate the employee, where the employee will be terminated, and *when* the employee will be terminated. Some of these questions are immaterial to this case while others, such as the "*when*," are central to Plaintiff's claim. If ECI terminated the plaintiff on January 7, 2021, her claim likely could not proceed. Instead, ECI waited over a month to effectuate its decision, and during the intervening period, Defendant became aware of Plaintiff's disability.

As this case clearly shows, what otherwise would be a lawful termination decision does not immunize every subsequent action taken in its name. Under the motivating factor standard applicable to many state laws, including the CFEPA, the legal framework focuses not solely on when the decision crystalized in the minds of Plaintiff's supervisors, but when the decision was effectuated. The longer a termination decision remains unexecuted, the greater the opportunity for unlawful considerations to creep in. Whether such considerations made a difference here presents a genuine issue of material fact inappropriate for resolution at summary judgment.

The remaining factual questions must be left to a jury, namely whether ECI retaliated against the plaintiff because of her request for an accommodation, and if so, whether Plaintiff is owed damages. And while a jury could find liability but award zero damages, the court will not usurp the role of a jury by granting summary judgment.

---

that other courts have sought to "bury" this misconception. *United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018); *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

**IV.    REMAND**

As the federal claims in this case have been dismissed, the parties are instructed to brief whether this court should remand the case to state court for further proceedings. *See* 28 U.S.C. § 1367(c)(3).

**V.    CONCLUSION**

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Defendant's motion for summary judgment is **GRANTED IN PART.**

   a. Summary judgment is **GRANTED** as to counts One (ADAAA Discrimination), Two (ADAAA Failure to Accommodate), Three (ADAAA Retaliation), Four (CFEPA Discrimination), and Five (CFEPA Failure to Accommodate).

   b. Summary judgment is **DENIED** as to count Six (CFEPA Retaliation).

2. The parties are ordered to submit briefing on or before **August 15, 2025,** as to whether the court ought to remand this case to the Superior Court of Connecticut.

   **IT IS SO ORDERED** in Hartford, Connecticut, this 22nd day of July, 2025.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE